# EXHIBIT A

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT <br> Madison ⊗ COUNTY | SUMMONS | For Court Use Only |
|---|---|---|

| Instructions ▼ | |
|---|---|
| Enter above the county name where the case was filed. | David Collado, et al. |
| Enter your name as Plaintiff/Petitioner. | **Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. |
| Enter the Case Number given by the Circuit Clerk. | 3M COMPANY, et al. |

**2025LA001004**

**Case Number**

| In **1**, if your lawsuit is for money, enter the amount of money you seek from the Defendant/Respondent. | **1.** | **Information about the lawsuit:** |
|---|---|---|
| | | Amount claimed:    $ 50000.01 |

**2.** **Contact information for the Plaintiff/Petitioner:**

In **2**, enter your contact information. If more than 1 person is bringing this lawsuit, attach an *Additional Plaintiff/Petitioner Contact Information* form.

Name *(First, Middle, Last)*: David Collado

Street Address, Apt #: c/o TorHoerman Law LLC, steven D. Davis, Esq.

City, State, ZIP: 210 South Main Street, Edwardsville, IL 62025

Telephone:

See attached for additional Plaintiff/Petitioner contact information

**3.** **Contact information for the Defendant/Respondent:**

In **3**, enter the name of the person you are suing and their address. If more than 1 person is being sued, attach an *Additional Defendant/Respondent Contact Information* form.

Name *(First, Middle, Last)*: 3M Company

Street Address, Apt #: 251 Little Falls Drive

City, State, ZIP: Wilmington, New Castle, DE 19808

Telephone:

See attached for additional Defendant/Respondent contact information

| **Important Information for the person receiving this form:** | You have been sued. <br> Follow the instructions on the next page on how to appear/answer. <br> • If you do not appear/answer the court may decide the case without hearing from you and enter a judgment against you for what the plaintiff/petitioner is asking. <br> • Your written appearance/answer must be filed on time and in the proper form. <br> • Forms for a written appearance/answer are available here: <br>   http://www.illinoiscourts.gov/forms/approved/default.asp <br> If you cannot afford to pay the fee for filing your appearance/answer, ask the circuit clerk for an *application for waiver of court fees.* <br> You should read all of the documents attached. |
|---|---|

Enter the Case Number given by the Circuit Clerk: _____ 2025LA001004

**4.    Instructions for person receiving this form (Defendant/Respondent):**

> In 4, the Circuit Clerk will give you the court date or appearance date, check any boxes that apply, and include the address of the court building and room where the Defendant/Respondent must file their response.

To respond to this *Summons* you must:

☐   Go to court:
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____ Court Room: _____
    City, State, ZIP: _____

☐   File a written *Appearance* and *Answer/Response* with the court:
    On or before this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____

☑   File a written *Appearance* and *Answer/Response* with the court within 30 days from the day you receive this *Summons* (listed below as the "Date of Service").
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____

> **STOP!**
> The Circuit Clerk will fill in this section.

**Witness this Date:** _____

*Seal of Court*

**Clerk of the Court:** _____

> **STOP!**
> The officer or process server will fill in the Date of Service.

**This *Summons* must be served within 30 days of its date, listed above.**

Date of Service: _____

*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant/Respondent or other person.)*

> **Plaintiff/Petitioner:**

To serve this *Summons*, you must hire the sheriff (or a private process server outside of Cook County) to deliver it and your Complaint/Petition to the Defendant/Respondent. If the sheriff (or private process server outside of Cook County) tries but can't serve the *Summons*, fill out another summons and repeat this process.

> **Attention:**

E-Filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp, or talk with your local circuit clerk's office.

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT Madison ☑ COUNTY | AFFIDAVIT OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | David Collado, et al. | |
| Enter your name as Plaintiff/Petitioner. | **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter the name of the person you are suing as Defendant/Respondent. | v. | |
| Enter the Case Number given by the Circuit Clerk. | 3M COMPANY, et al. | **2025LA001004** |
| | **Defendant / Respondent** *(First, middle, last name)* | **Case Number** |

**\*\*Stop. Do not complete the form. The sheriff will fill in the form.\*\***

DO NOT complete this section. The sheriff will complete it.

My name is _____ and I swear under oath
        *First, Middle, Last*
that I served the *Summons* and Complaint/Petition on the Defendant/Respondent

_____ **as follows:**
*First, Middle, Last*

☐ Personally on the Defendant/Respondent:
Male: ☐   Female: ☐   Approx. Age: _____ Hair Color: _____
Height: _____ Weight: _____
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address: _____
City, State, ZIP: _____

☐ At the Defendant/Respondent's home:
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address: _____
City, State, ZIP: _____
And left it with: _____
        *First, Middle, Last*
Male: ☐   Female: ☐   Approx. Age: _____
and by sending a copy to this defendant in a postage-paid, sealed envelope to the
above address on _____ , 20 _____ .

☐ On the Corporation's agent, _____
        *First, Middle, Last*
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address: _____
City, State, ZIP: _____

Enter the Case Number given by the Circuit Clerk:_____

2025LA001004

| DO NOT complete this section. The sheriff, or private process server will complete it. | **By:** |
|---|---|

_____
*Signature*

_____
*Print Name*

**FEES**

By certified/registered    $ _____

Service and Return    $ _____

Miles: _____    $ _____

Total    $ _____

Print Form     Save Form     Reset Form

2025LA001004

## DEFENDANTS:

**3M COMPANY –** Corporation Service Company, 251 Little Falls Drive, Wilmington, New Castle, DE 19808

**AGC CHEMICALS AMERICAS INC -** 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341

**ALLSTAR FIRE EQUIPMENT -** 12328 Lower Azusa Road, Arcadia, California 91006

**AMEREX CORPORATION -** 7595 Gadsden Highway, Trussville, Alabama 35173

**ARCHROMA U.S. INC -** 5435 77 Center Drive, #10 Charlotte, North Carolina 28217

**ARKEMA, INC. -** 900 1ˢ Avenue, King of Prussia, Pennsylvania 19406

**BASF CORPORATION -** 100 Park Avenue, Florham Park, New Jersey 07932

**BUCKEYE FIRE EQUIPMENT COMPANY -** 110 Kings Road, Mountain, North Carolina 28086

**CARRIER GLOBAL CORP.-** 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418

**CB GARMENT, INC. –** 830 Wilson Street, Eugene, OR 97402

**CHEMDESIGN PRODUCTS, INC. -** 2 Stanton Street, Marinette, Wisconsin 54143

**CHEMGUARD, INC. -** One Stanton Street, Marinette, Wisconsin 54143

**CHEMICALS, INC. -** 12321 Hatcherville Road, Baytown, Texas 77521

**CHEMOURS COMPANY FC, LLC -** 1007 Market Street, Wilmington, Delaware 19899

**CHUBB FIRE, LTD. -** Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ

**CLARIANT CORP. -** 500 E. Morehead Street, Suite 400, Charlotte, North Carolina 28202

**CORTEVA, INC. -** Chestnut Run Plaza 735, Wilmington, Delaware 19805

**DAIKIN AMERICA, INC. –** 20 Olympic Drive, Orangeburg, NY 10962

**DEEPWATER CHEMICALS, INC. -** 196122 E County Road 735, Woodward, Oklahoma 73801

**DU PONT DE NEMOURS INC. (f/k/a DOWDUPONT INC.) -** 1007 Market Street, Wilmington, Delaware 19899

1

2025LA001004

**DYNAX CORPORATION -** 103 Fairview Park Drive, Elmsford, New York, 10523-1544

**E.I. DU PONT DE NEMOURS AND COMPANY -** 1007 Market Street, Wilmington, Delaware 19898

**FIRE-DEX, LLC -** 780 South Progress Drive, Medina, Ohio 44256

**FIRE SERVICE PLUS, INC. –** 5446 Katherine Street, Simi Valley, CA 93063

**GLOBE MANUFACTURING COMPANY LLC -** 37 Loudon Road, Pittsfield, New Hampshire 03263

**HONEYWELL SAFETY PRODUCTS USA, INC. -** 300 South Tryon Street Suite 500, Charlotte, North Carolina 28202

**INNOTEX CORP. –** 2397 Harts Ferry Road, Ohatchee, AL 36271

**JOHNSON CONTROLS, INC. –** 5757 North Green Bay Avenue, Milwaukee, WI 53209

**KIDDE PLC. -** One Carrier Place, Farmington, Connecticut 06034

**LION GROUP, INC. -** 7200 Poe Avenue, Suite 400 Dayton, Ohio, 45414

**L.N. Curtis –** 185 Lennon Lane, Suite 110, Walnut Creek, CA 94598

**MILLIKEN & COMPANY –** 920 Milliken Road, Spartanburg, SC 29303

**MINE RESPIRATOR COMPANY, LLC (f/k/a MINE SAFETY APPLIANCES CO., LLC) -** 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania, 16066

**MUNICIPAL EMERGENCY SERVICES, INC. -** 12 Turnberry Lane, Sandy Hook, Connecticut 06482

**NATION FORD CHEMICAL COMPANY -** 2300 Banks Street, Fort Mill, South Carolina 29715

**NATIONAL FOAM, INC. -** 141 Junny Road, Angier, North Carolina, 27501

**PBI PERFORMANCE PRODUCTS, INC. -** 9800-D Southern Pine Boulevard, Charlotte, North Carolina 28273

**PERIMETER SOLUTIONS, LP –** 10677 Jersey Blvd, Rancho Cucamonga, CA 91730

2025LA001004

**RICOCHET MANUFACTURING CO, INC.** – 4700 Wissahickon Avenue, Suite 112, Philadelphia, PA 19114

**SAFETY COMPONENTS FABRIC TECHNOLOGIES, INC** – 40 Emery Street, Greenville, SC 29605

**SOUTHERN MILLS, INC. (d/b/a TenCate Protective Fabrics) -** 6501 Mall Boulevard, Union City, Georgia 30291

**STEDFAST USA, INC. -** 800 Mountain View Drive, Piney Flats, Tennessee 37686

**THE CHEMOURS COMPANY -** 1007 Market Street, Wilmington, Delaware 19898

**TYCO FIRE PRODUCTS LP. -** 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466

**UNITED TECHNOLOGIES CORPORATION -** 8 Farm Springs Road, Farmington, Connecticut 06032

**UTC FIRE & SECURITY AMERICAS -** 3211 Progress Drive, Lincolnton, North Carolina 28092

**VERIDIAN LIMITED** – 3710 West Milwaukee Street, Spencer, IA 51301

**W.L. Gore & Associates, Inc. -** 1901 Barksdale Road, Newark, Delaware 19711

**Witmer Public Safety Group, Inc.** – 104 Independence Way, Coatesville, PA 19320

3

***EFILED***
Case Number 2025LA001004
Date: 8/12/2025 12:59 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DAVID COLLADO, DAVID
HALLIMORE, DAVID HYATT, DAVID
MALMBERG, DAVID SAYLES, DAVID
SHOTWELL, DAVID WILSON, DEAN
CREECH, DEENA BRUNNER,
DEMETRIUS HAMILTON, DENA
SCOTT, DENNIS BARLESI, DIANA
DOWNS, DILLON MACKOWIAK,
DONALD ALLEN, DONALD BROMLEY,
DONALD HENRY, DONALD MURPHY,
DONNIE SPENCE, DORIS PICHARDO,
TYLER ENGEBRETSON, DOUG
DAVISON, DR HARDISTER, EDWARD
DEMPSEY, ELDEN KIER, ERIC
SARRAILLON, ERIC SCHNABEL,
ERIC ZACHER, ETHAN KNIGHT,
EVELENA STRATTON, FRANCISCO
XAVIAR, FRANK BOGARDUS, FRANK
GENCO, FRANK SANTORIA, FRED
BOMBERG, FRED MRAVINTZ,
FREDERICK POFF, GABRIEL
LUCERO, GABRIEL RODRIGUEZ,
GABRIELA RODRIGUEZ, GARRETT
STOLL, GARY KILPELA, GARY
GOSSER, GAYLAN PEGEL, GEORGE
FRANKE, GEORGE MOHLER,
GERALD ROUNDS, GILBERT ZARE,
GLENN GAVAN, GLENN
GOTTSCHALL, GLENN HARSH,
GLENN MARCH, GLENN RIDDLE,
GLENN THOMAS, GREG GARCIA,
GREGG GILLS, GREGG LEINWEBER,
GREGOR HOESSEL, GREGORY
PERRY, GREGORY SAWKA,
GREGORY SHOCKLEY, GREGORY
WINGARD, GUY ANASTASIA,
GWENDOLYN JORDAN, HARRY
HANSEN, HARRY HARRIS, HARRY
HICKS, HARRY MCMILLAN, HENRY
FUENTES, HENRY LITTLE, HOMER
DENSON,

Civil Action No: 2025LA001004

**Plaintiffs,**

**v.**

**3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company);** *et al.,*

**Defendants.**

2025LA001004

## AFFIDAVIT OF DAMAGES
## SUPREME COURT RULE 222

**THE UNDERSIGNED** being first duly sworn upon oath, deposes and states that the money damages sought in this cause of action does exceed $50,000.00.

Dated: August 12, 2025

Respectfully Submitted,

Steven D. Davis, IL No. 6281263
Eric W. Cracken, IL No. 6334234
TorHoerman Law LLC
210 S. Main Street
Edwardsville, IL 62025
Ph: 618-656-4400
Fax: 618-656-4401
E: sdavis@thlawyer.com
    ecracken@thlawyer.com
*Attorneys for Plaintiffs*

***EFILED***
Case Number 2025LA001004
Date: 8/12/2025 12:59 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

**DAVID COLLADO, DAVID
HALLIMORE, DAVID HYATT, DAVID
MALMBERG, DAVID SAYLES, DAVID
SHOTWELL, DAVID WILSON, DEAN
CREECH, DEENA BRUNNER,
DEMETRIUS HAMILTON, DENA
SCOTT, DENNIS BARLESI, DIANA
DOWNS, DILLON MACKOWIAK,
DONALD ALLEN, DONALD BROMLEY,
DONALD HENRY, DONALD MURPHY,
DONNIE SPENCE, DORIS PICHARDO,
TYLER ENGEBRETSON, DOUG
DAVISON, DR HARDISTER, EDWARD
DEMPSEY, ELDEN KIER, ERIC
SARRAILLON, ERIC SCHNABEL, DIANA
ERIC ZACHER, ETHAN KNIGHT,
EVELENA STRATTON, FRANCISCO
XAVIAR, FRANK BOGARDUS, FRANK
GENCO, FRANK SANTORIA, FRED
BOMBERG, FRED MRAVINTZ,
FREDERICK POFF, GABRIEL
LUCERO, GABRIEL RODRIGUEZ,
GABRIELA RODRIGUEZ, GARRETT
STOLL, GARY KILPELA,  GARY
GOSSER, GAYLAN PEGEL, GEORGE
FRANKE, GEORGE MOHLER,
GERALD ROUNDS, GILBERT ZARE,
GLENN GAVAN, GLENN
GOTTSCHALL, GLENN HARSH,
GLENN MARCH, GLENN RIDDLE,
GLENN THOMAS, GREG GARCIA,
GREGG GILLS, GREGG LEINWEBER,
GREGOR HOESSEL, GREGORY
PERRY, GREGORY SAWKA,
GREGORY SHOCKLEY, GREGORY
WINGARD, GUY ANASTASIA,
GWENDOLYN JORDAN, HARRY
HANSEN, HARRY HARRIS, HARRY
HICKS, HARRY MCMILLAN, HENRY
FUENTES, HENRY LITTLE, HOMER
DENSON,**

Civil Action No: 2025LA001004

Plaintiffs,

v.

2025LA001004

**3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company);** *et al.,*

Defendants.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury for all causes herein so triable.

Dated: August 12, 2025

Respectfully Submitted,

*Steven D. Davis*

Steven D. Davis, IL No. 6281263
Eric W. Cracken, IL No. 6334234
TorHoerman Law LLC
210 S. Main Street
Edwardsville, IL 62025
Ph: 618-656-4400
Fax: 618-656-4401
E: sdavis@thlawyer.com
    ecracken@thlawyer.com
*Attorneys for Plaintiffs*

***EFILED***
Case Number 2025LA001004
Date: 8/12/2025 12:59 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

## IN THE CIRCUIT COURT
## FOR THE THIRD JUDICIAL CIRCUIT
## MADISON COUNTY, ILLINOIS

DAVID COLLADO,
DAVID HALLIMORE,
DAVID HYATT,
DAVID MALMBERG,
DAVID SAYLES,
DAVID SHOTWELL,
DAVID WILSON,
DEAN CREECH,
DEENA BRUNNER,
DEMETRIUS HAMILTON,
DENA SCOTT,
DENNIS BARLESI,
DIANA DOWNS,
DILLON MACKOWIAK,
DONALD ALLEN,
DONALD BROMLEY,
DONALD HENRY,
DONALD MURPHY,
DONNIE SPENCE,
DORIS PICHARDO,
TYLER ENGEBRETSON,
DOUG DAVISON,
DR HARDISTER,
EDWARD DEMPSEY,
ELDEN KIER,
ERIC SARRAILLON,
ERIC SCHNABEL,
ERIC ZACHER,
ETHAN KNIGHT,
EVELENA STRATTON,
FRANCISCO XAVIAR,
FRANK BOGARDUS,
FRANK GENCO,
FRANK SANTORIA,
FRED BOMBERG,
FRED MRAVINTZ,
FREDERICK POFF,
GABRIEL LUCERO,
GABRIEL RODRIGUEZ,
GABRIELA RODRIGUEZ,
GARRETT STOLL,

Civil Action No: _2025LA001004_____

1

**GARY KILPELA,**
**GARY GOSSER,**
**GAYLAN PEGEL,**
**GEORGE FRANKE,**
**GEORGE MOHLER,**
**GERALD ROUNDS,**
**GILBERT ZARE,**
**GLENN GAVAN,**
**GLENN GOTTSCHALL,**
**GLENN HARSH,**
**GLENN MARCH,**
**GLENN RIDDLE,**
**GLENN THOMAS,**
**GREG GARCIA,**
**GREGG GILLS,**
**GREGG LEINWEBER,**
**GREGOR HOESSEL,**
**GREGORY PERRY,**
**GREGORY SAWKA,**
**GREGORY SHOCKLEY,**
**GREGORY WINGARD,**
**GUY ANASTASIA,**
**GWENDOLYN JORDAN,**
**HARRY HANSEN,**
**HARRY HARRIS,**
**HARRY HICKS,**
**HARRY MCMILLAN,**
**HENRY FUENTES,**
**HENRY LITTLE,**
**HOMER DENSON,**

    Plaintiffs,

    v.

**3M COMPANY (f/k/a Minnesota**
**Mining and Manufacturing Company);**
**AGC CHEMICALS AMERICAS INC.;**
**AMEREX CORPORATION;**
**ARCHROMA U.S. INC.;**
**ARKEMA, INC.;**
**BASF CORPORATION**
**BUCKEYE FIRE EQUIPMENT**
**COMPANY;**
**CARRIER GLOBAL CORPORATION;**
**CHEMDESIGN PRODUCTS, INC.;**

2025LA001004

**COMPLAINT AND JURY DEMAND**

2

CHEMGUARD, INC.;
CHEMICALS, INC.;
CHEMOURS COMPANY FC, LLC;
CHUBB FIRE, LTD;
CLARIANT CORP.;
CORTEVA, INC.;
DAIKIN AMERICA, INC.;
DEEPWATER CHEMICALS, INC.;
DU PONT DE NEMOURS INC. (f/k/a
DOWDUPONT INC.);
DYNAX CORPORATION;
E.I. DU PONT DE NEMOURS AND
COMPANY;
JOHNSON CONTROLS, INC.;
KIDDE PLC;
NATION FORD CHEMICAL
COMPANY;
NATIONAL FOAM, INC.;
PERIMETER SOLUTIONS, LP;
THE CHEMOURS COMPANY;
TYCO FIRE PRODUCTS LP, as
successor-in-interest to The Ansul
Company;
UNITED TECHNOLOGIES
CORPORATION;
UTC FIRE &  SECURITY AMERICAS
CORPORATION, INC. (f/k/a GE
Interlogix, Inc.);
ALLSTAR FIRE EQUIPMENT;
CB GARMENT, INC.;
FIRE-DEX, LLC;
FIRE SERVICE PLUS, INC.;
GLOBE MANUFACTURING COMPANY
LLC;
HONEYWELL SAFETY PRODUCT USA,
INC.;
INNOTEX CORP.;
L.N. CURTIS & SONS;
LION GROUP, INC.;
MILLIKEN & COMPANY;
MINE RESPIRATOR COMPNAY LLC
f/k/a MINE SAFETY APPLIANCES CO.,
LLC;
MUNICIPAL EMERGENCY SERVICES,
INC.;
PBI PERFORMANCE PRODUCTS, INC.;

2025LA001004

3

**RICOCHET MANUFACTURING CO.,
INC;
SAFETY COMPONENTS FABRIC
TECHNOLOGIES, INC.;
SOUTHERN MILLS, INC. d/b/a
TENCATE PROTECTIVE FABRICS;
SPRINGFIELD LLC;
STEDFAST USA, INC.;
VERIDIAN LIMITED;
W.L. GORE & ASSOCIATES INC.;
WITMER PUBLIC SAFETY GROUP,**

2025LA001004

**Defendants.**

## COMPLAINT

Plaintiffs, through counsel, allege upon information and belief as follows:

## INTRODUCTION

1.      Plaintiffs bring this action for damages for personal injury resulting from exposure to aqueous film-forming foams ("AFFF") and firefighter turnout gear ("TOG") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS include, but are not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals, including those that degrade to PFOA and/or PFOS.

2.      AFFF is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

3.      TOG is personal protective equipment designed for heat and moisture resistance in order to protect firefighters in hazardous situations. Most turnout gear is made up of a thermal liner, moisture barrier, and an outer layer. The inner layers contain PFAS, and the outer layer is often treated with additional PFAS.

4.      Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released

4

into the stream of commerce AFFF or TOG with knowledge that it contained highly toxic and bio

persistent PFAS, which would expose end users of the product to the risks associated with PFAS.

Further, Defendants designed, marketed, developed, manufactured, distributed, released, trained

users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used

underlying chemicals and/or products added to AFFF or TOG which contained PFAS for use in

firefighting.

5.      PFAS bind to proteins in the blood of humans exposed to the material and remains and

persist over long periods of time. Due to their unique chemical structure, PFAS accumulate in the

blood and body of exposed individuals.

6.      PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have

known, that PFAS remain in the human body while presenting significant health risks to humans.

7.      Defendants' PFAS-containing AFFF or TOG products were used by the Plaintiffs in their

intended manner, without significant change in the products' condition. Plaintiffs were unaware

of the dangerous properties of the Defendants' AFFF or TOG products and relied on the

Defendants' instructions as to the proper handling of the products. Plaintiffs' consumption,

inhalation, and/or dermal absorption of PFAS from Defendant's AFFF or TOG products caused

Plaintiffs to develop the serious medical conditions and complications alleged herein.

8.      Through this action, Plaintiffs seek to recover compensatory and punitive damages arising

out of the permanent and significant damages sustained as a direct result of exposure to

Defendants' AFFF or TOG products at various locations during the course of Plaintiffs' training

and firefighting activities. Plaintiffs further seek injunctive, equitable, and declaratory relief

arising from the same.

5

## JURISIDICTION AND VENUE

9. The Defendants are subject to the jurisdiction of this Court on the grounds that (a) one or more of the Defendants is a foreign corporation whose principal place of business is located in the State of Illinois; (b) one or more of the Defendants are foreign corporations that either are registered to conduct business in the State of Illinois and have actually transacted business in Illinois; and/or (c) one or more of the Defendants is an Illinois corporation. Plaintiffs' claims arise out of or relate to Defendants' purposeful contacts with the State of Illinois.

10. Venue is proper pursuant to 735 ILCS 5/2-101 and 102 because the Defendants maintain registered offices in this county, maintain other offices in this county, and/or do business in this county.

11. Joinder of all parties is proper pursuant to 735 ILCS 5/2-404. Defendants are permissively joined in this action because the exposure, injuries, and relief requested all arise out of the same transaction or occurrence or series of transactions or occurrences and there are common questions of fact and/or law questions.

## PARTIES

12. Plaintiff David Collado is a resident and citizen of Miami, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

13. Plaintiff David Collado was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

14. Plaintiff David Hallimore is a resident and citizen of Bryan, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

6

15.    Plaintiff David Hallimore was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

16.    Plaintiff David Hyatt is a resident and citizen of Delaware, Ohio. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

17.    Plaintiff David Hyatt was diagnosed with ulcerative colitis and prostate cancer as a result of exposure to Defendants' AFFF and/or TOG products.

18.    Plaintiff David Malmberg is a resident and citizen of Saint Paul, Minnesota. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

19.    Plaintiff David Malberg was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

20.    Plaintiff David Sayles is a resident and citizen of Douglas, Georgia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

21.    Plaintiff David Sayles was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

22.    Plaintiff David Shotwell is a resident and citizen of Spotsylvania, Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

23.    Plaintiff David Shotwell was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

7

24.     Plaintiff David Wilson is a resident and citizen of Spring, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

25.     Plaintiff David Wilson was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

26.     Plaintiff Dean Creech is a resident and citizen of Wyandotte, Michigan. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

27.     Plaintiff Dean Creech was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

28.     Plaintiff Deena Brunner is a resident and citizen of Orange Park, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

29.     Plaintiff Deena Brunner was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

30.     Plaintiff Demetrius Hamilton is a resident and citizen of Chula Vista, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

31.     Plaintiff Demetrius Hamilton was diagnosed with thyroid cancer and thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

32.     Plaintiff Dena Scott is a resident and citizen of Bremerton, Washington. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

8

33.    Plaintiff Dena Scott was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

34.    Plaintiff Dennis Barlesi is a resident and citizen of Nampa, Idaho. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

35.    Plaintiff Dennis Barlesi was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF and/or TOG products.

36.    Plaintiff Diana Downs is a resident and citizen of Brasstown, North Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

37.    Plaintiff Diana Downs was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

38.    Plaintiff Dillon Mackowiak is a resident and citizen of Sterling Heights, Michigan. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

39.    Plaintiff Dillon Mackowiak was diagnosed with thyroid cancer, thyroid disease, and lymphoma as a result of exposure to Defendants' AFFF and/or TOG products.

40.    Plaintiff Donald Allen is a resident and citizen of Rochester, New York. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

41.    Plaintiff Donald Allen was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

9

42.     Plaintiff Donald Bromley is a resident and citizen of Sterling Heights, Michigan. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

43.     Plaintiff Donald Bromley was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

44.     Plaintiff Donald Henry is a resident and citizen of Old Fort, Tennessee. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

45.     Plaintiff Donald Henry was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

46.     Plaintiff Donald Murphy is a resident and citizen of Washington, DC. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

47.     Plaintiff Donald Murphy was diagnosed with liver cancer as a result of exposure to Defendants' AFFF and/or TOG products.

48.     Plaintiff Donnie Spence is a resident and citizen of Newport, Tennessee. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

49.     Plaintiff Donnie Spence was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

50.     Plaintiff Doris Pichardo is a resident and citizen of Cape Coral, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

51.    Plaintiff Doris Pichardo was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

52.    Plaintiff Tyler Engebretson is a resident and citizen of Algonquin, Illinois. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

53.    Plaintiff Tyler Engebretson was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

54.    Plaintiff Doug Davison is a resident and citizen of Northfield, Ohio. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

55.    Plaintiff Doug Davison was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

56.    Plaintiff DR Hardister is a resident and citizen of Roy, Utah. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

57.    Plaintiff DR Hardister was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

58.    Plaintiff Edward Dempsey is a resident and citizen of Lake City, South Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

59.    Plaintiff Edward Dempsey was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

11

60.     Plaintiff Elden Kier is a resident and citizen of Greenville, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

61.     Plaintiff Elden Kier was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF and/or TOG products.

62.     Plaintiff Eric Sarraillon is a resident and citizen of Coolidge, Arizona. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

63.     Plaintiff Eric Sarraillon was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

64.     Plaintiff Eric Schnabel is a resident and citizen of Dubuque, Iowa. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

65.     Plaintiff Eric Schnabel was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

66.     Plaintiff Eric Zacher is a resident and citizen of Rockledge, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

67.     Plaintiff Eric Zacher was diagnosed with thyroid cancer and thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

68.     Plaintiff Ethan Knight is a resident and citizen of Oklahoma City, Oklahoma. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

12

69.   Plaintiff Ethan Knight was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

70.   Plaintiff Evelena Stratton is a resident and citizen of Pasco, Washington. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

71.   Plaintiff Evelena Stratton was diagnosed with thyroid cancer and thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

72.   Plaintiff Francisco Xavier is a resident and citizen of Stafford, Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

73.   Plaintiff Francisco Xavier was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

74.   Plaintiff Frank Bogardus is a resident and citizen of Mattydale, New York. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

75.   Plaintiff Frank Bogardus was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

76.   Plaintiff Frank Genco is a resident and citizen of Okatie, South Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

77.   Plaintiff Frank Genco was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

13

78.    Plaintiff Frank Santoria is a resident and citizen of Winter Haven, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

79.    Plaintiff Frank Santoria was diagnosed with liver cancer as a result of exposure to Defendants' AFFF and/or TOG products.

80.    Plaintiff Fred Bomberg is a resident and citizen of Waukesha, Wisconsin. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

81.    Plaintiff Fred Bomberg was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

82.    Plaintiff Fred Mravintz is a resident and citizen of Pittsburg, Pennsylvania. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

83.    Plaintiff Fred Mravintz was diagnosed with thyroid cancer and thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

84.    Plaintiff Frederick Poff is a resident and citizen of Dayton, Tennessee. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

85.    Plaintiff Frederick Poff was diagnosed with thyroid cancer as a result of exposure to Defendants' AFFF and/or TOG products.

86.    Plaintiff Gabriel Lucero is a resident and citizen of Albuquerque, New Mexico. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

14

87.     Plaintiff Gabriel Lucero was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF and/or TOG products.

88.     Plaintiff Gabriel Rodriguez is a resident and citizen of Laredo, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

89.     Plaintiff Gabriel Rodriguez was diagnosed with ulcerative colitis and colorectal cancer as a result of exposure to Defendants' AFFF and/or TOG products.

90.     Plaintiff Gabriela Rodriguez is a resident and citizen of Reedley, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

91.     Plaintiff Gabriela Rodriguez was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

92.     Plaintiff Garrett Stoll is a resident and citizen of Klamath Falls, Oregon. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

93.     Plaintiff Garrett Stoll was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

94.     Plaintiff Gary Kilpela is a resident and citizen of Hancock, Michigan. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

95.     Plaintiff Gary Kilpela was diagnosed with liver cancer as a result of exposure to Defendants' AFFF and/or TOG products.

15

96.     Plaintiff Gary Gosser is a resident and citizen of Springfield, Oregon. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

97.     Plaintiff Gary Gosser was diagnosed with thyroid disease and breast cancer as a result of exposure to Defendants' AFFF and/or TOG products.

98.     Plaintiff Gaylan Pegel is a resident and citizen of Merrifield, Minnesota. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

99.     Plaintiff Gaylan Pegel was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF and/or TOG products.

100.    Plaintiff George Franke is a resident and citizen of Norwich, New York. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

101.    Plaintiff George Franke was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF and/or TOG products.

102.    Plaintiff George Mohler is a resident and citizen of Lakeland, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

103.    Plaintiff George Mohler was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

104.    Plaintiff Gerald Rounds is a resident and citizen of Gentry, Arkansas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

105.    Plaintiff Gerald Rounds was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

106.    Plaintiff Gilbert Zare is a resident and citizen of Tujunga, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

107.    Plaintiff Gilbert Zare was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

108.    Plaintiff Glenn Gavan is a resident and citizen of Newton, New Jersey. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

109.    Plaintiff Glenn Gavan was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

110.    Plaintiff Glenn Gottschall is a resident and citizen of Abilene, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

111.    Plaintiff Glenn Gottschall was diagnosed with testicular cancer as a result of exposure to Defendants' AFFF and/or TOG products.

112.    Plaintiff Glenn Harsh is a resident and citizen of Laurel Hill, North Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

113.    Plaintiff Glenn Harsh was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

114.    Plaintiff Glenn March is a resident and citizen of Reisterstown, Maryland. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

115.    Plaintiff Glenn March was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

116.    Plaintiff Glenn Riddle is a resident and citizen of Saraland, Alabama. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

117.    Plaintiff Glenn Riddle was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

118.    Plaintiff Glenn Thomas is a resident and citizen of Athens, Alabama. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

119.    Plaintiff Glenn Thomas was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

120.    Plaintiff Greg Garcia is a resident and citizen of Oklahoma City, Oklahoma. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

121.    Plaintiff Greg Garcia was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

122.    Plaintiff Gregg Gills is a resident and citizen of Huntsville, Alabama. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

18

123.    Plaintiff Gregg Gills was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

124.    Plaintiff Gregg Leinweber is a resident and citizen of Kerrville, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

125.    Plaintiff Gregg Leinweber was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

126.    Plaintiff Gregor Hoessel is a resident and citizen of Mechanicsburg, Pennsylvania. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

127.    Plaintiff Gregor Hoessel was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

128.    Plaintiff Gregory Perry is a resident and citizen of Vancleave, Mississippi. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

129.    Plaintiff Gregory Perry was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

130.    Plaintiff Gregory Sawka is a resident and citizen of Enterprise, Alabama. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

131.    Plaintiff Gregory Sawka was diagnosed with ulcerative colitis and prostate cancer as a result of exposure to Defendants' AFFF and/or TOG products.

19

132.    Plaintiff Gregory Shockley is a resident and citizen of Huntington, West Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

133.    Plaintiff Gregory Shockley was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

134.    Plaintiff Gregory Wingard is a resident and citizen of Texas City, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

135.    Plaintiff Gregory Wingard was diagnosed with ulcerative colitis and thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

136.    Plaintiff Guy Anastasia is a resident and citizen of Poway, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

137.    Plaintiff Guy Anastasia was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

138.    Plaintiff Gwendolyn Jordan is a resident and citizen of Clarksdale, Mississippi. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

139.    Plaintiff Gwendolyn Jordan was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

140.    Plaintiff Harry Hansen is a resident and citizen of Leavenworth, Washington. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

141.    Plaintiff Harry Hansen was diagnosed with prostate cancer, thyroid disease, and multiple myeloma as a result of exposure to Defendants' AFFF and/or TOG products.

142.    Plaintiff Harry Harris is a resident and citizen of Raymore, Missouri. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

143.    Plaintiff Harry Harris was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

144.    Plaintiff Harry Hicks is a resident and citizen of San Diego, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

145.    Plaintiff Harry Hicks was diagnosed with kidney cancer as a result of exposure to Defendants' AFFF and/or TOG products.

146.    Plaintiff Harry McMillan is a resident and citizen of White Stone, Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

147.    Plaintiff Harry McMillan was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

148.    Plaintiff Henry Fuentes is a resident and citizen of La Mesa, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

149.    Plaintiff Henry Fuentes was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

21

150.    Plaintiff Henry Little is a resident and citizen of Sarasota, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

151.    Plaintiff Henry Little was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF and/or TOG products.

152.    Plaintiff Homer Denson is a resident and citizen of Rosharon, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter.

153.    Plaintiff Homer Denson was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF and/or TOG products.

154.    Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors, and sellers of PFAS-containing AFFF products or underlying PFAS-containing chemicals used in AFFF production. The following Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, promoted, and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations for use in fighting Class B fires such that each Defendant knew or should have known said products would be delivered to areas for active use by Plaintiffs during the course of training and firefighting activities.

155.    Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

156.    3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF

22

containing PFAS that are used in firefighting training and response exercises which are the subject
of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed,
released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled
and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use
in firefighting.

157.    Defendant AGC Chemicals Americas, Inc. ("AGC") is a Delaware corporation and does
business throughout the United States. AGC has its principal place of business at 55 E. Uwchlan
Ave., Suite 201, Exton, Pennsylvania 19341.

158.    AGC designed, marketed, developed, manufactured, distributed, released, trained users,
produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF
containing PFAS that are used in firefighting training and response exercises which are the subject
of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed,
released, trained users, produced instructional materials, promoted, sold and/or otherwise handled
and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use
in firefighting.

159.    Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business
throughout the United States. Amerex has its principal place of business at 7595 Gadsden
Highway, Trussville, Alabama 35173.

160.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users,
produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF
containing PFAS that are used in firefighting training and response exercises which are the subject
of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed,
released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled

23

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

161.    Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

162.    Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

163.    Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

164.    Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled

24

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

165.    Defendant BASF Corporation ("BASF") is a Delaware corporation and does business throughout the United States. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

166.    BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

167.    Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

168.    Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

169.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

170.    Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

171.    Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

172.    ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

26

173.    Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

174.    Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

175.    Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

176.    Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

177.    Defendant Chemours Company FC, LLC ("Chemours FC"), is a Limited Liability Company and does business throughout the United States. Chemours has its principal place of

27

business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC is a wholly-owned
subsidiary of The Chemours Company, which is a citizen of Deleware.

178.    Chemours FC designed, marketed, developed, manufactured, distributed, released, trained
users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF
containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed,
developed, manufactured, distributed, released, trained users, produced instructional materials,
promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added
to AFFF which contained PFAS for use in firefighting.

179.    Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices
at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Chubb maintains its
headquarters in the United Kingdom. Upon information and belief, Chubb is registered in the
United Kingdom with a registered number of 134210.  Upon information and belief, Chubb is or
has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb
Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb
National Foam, Inc.

180.    Chubb designed, marketed, developed, manufactured, distributed, released, trained users,
produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing
PFAS that are the subject of this Complaint. Further, Defendant designed, marketed, developed,
manufactured, distributed, released, trained users, produced instructional materials, promoted,
sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF
which contained PFAS for use in firefighting.

181.    Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

182.    Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

183.    Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

184.    Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

185.    Defendant Daikin America, Inc. ("Daikin") is a Delaware corporation and does business throughout the United States. Daikin has its principal place of business at 20 Olympic Drive, Orangeburg, NY 10962.

29

186.    Daikin designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

187.    Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States. Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801.

188.    Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

189.    Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont") is a Delaware corporation and does business throughout the United States. DowDuPont, has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

30

190.    DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

191.    Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

192.    Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

193.    Defendant E. I. du Pont de Nemours and Company ("DuPont") is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

194.    DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted,

31

sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF
which contained PFAS for use in firefighting.

195.    Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a foreign corporation organized and
existing under the laws of the State of Delaware and does business throughout the United States.
Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut
06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc.
and/or Williams US, Inc.

196.    Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained
users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF
containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed,
developed, manufactured, distributed, released, trained users, produced instructional materials,
promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added
to AFFF which contained PFAS for use in firefighting.

197.    Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company
and does business throughout the United States. Nation Ford has its principal place of business at
2300 Banks Street, Fort Mill, South Carolina 29715.

198.    Nation Ford designed, marketed, developed, manufactured, distributed, released, trained
users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF
containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed,
developed, manufactured, distributed, released, trained users, produced instructional materials,
promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added
to AFFF which contained PFAS for use in firefighting.

199.    Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

200.    National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

201.    Defendant The Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

202.    Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

203.    Defendant Tyco Fire Products, LP (Tyco LP), as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco LP is a citizen of Nevada and New Jersey.

33

204.    More specifically, Tyco LP has two partners: (1) Fire Products GP Holdings LLC, and (2) Central Sprinkler LLC.

205.    Fire Products GP Holdings LLC is 100% owned by Central Sprinkler LLC. Central Sprinkler LLC is 100% owned by Tyco International Management, LLC. Tyco International Management, LLC is 100% owned by Tyco Fire & Security US Holdings, LLC. Tyco Fire & Security US Holdings LLC is 100% owned by Tyco Fire & Security (US) Management, Inc. Tyco Fire & Security (US) Management, Inc. is incorporated under the laws of the State of Nevada. Tyco Fire & Security (US) Management, Inc.'s principal place of business and "nerve center" is located in the State of New Jersey. Its United States headquarters is and has been located in New Jersey, where its key corporate officers work, corporate decisions are made, and key administrative functions are performed. Therefore, Tyco Fire & Security (US) Management, Inc. is a citizen of Nevada and New Jersey. Therefore, Tyco LP is a citizen of Nevada and New Jersey.

206.    Tyco LP manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

207.    Tyco LP is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco LP/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

34

208.   Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

209.   United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

210.   Defendant UTC Fire & Security Americas Corporation, Inc.  (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc., is part of the UTC Climate Control & Security unit of United Technologies Corporation.

211.   UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

212.    Defendant Allstar Fire Equipment is a California corporation ("Allstar") and does business throughout the United States. Allstar has its principal place of business at 12328 Lower Azusa Road, Arcadia, California 91006.

213.    Allstar developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

214.    Defendant CB Garment, Inc. ("CrewBoss") is a Delaware corporation and does business throughout the United States. CrewBoss has its principal place of business at 1127 BROADWAY ST NE, Eugene, OR 97301.

215.    CrewBoss developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

216.    Defendant Fire-Dex, LLC ("Fire-Dex") is a Delaware limited liability company and does business throughout the United States. Fire-Dex has its principal place of business at 780 South Progress Drive, Medina, Ohio 44256. Fire-Dex's sole members is an Ohio citizen.

217.    Fire-Dex developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

218.    Defendant Globe Manufacturing Company LLC ("Globe") is a New Hampshire corporation and does business throughout the United States. Globe has its principal place of business at 37 Loudon Road, Pittsfield, New Hampshire 03263. Plaintiffs believe Globe is a citizen of Pennsylvania.

219.    Globe developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

36

220.    Defendant Fire Service Plus, Inc. ("Fire Service Plus") is a Georgia corporation and does business throughout the United States. Fire Service Plus has its principal place of business at 5446 Katherine Street, Simi Valley, CA 93063.

221.    Fire Service Plus developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

222.    Defendant Honeywell Safety Products USA, Inc. ("Honeywell") is a Delaware corporation and does business throughout the United States. Honeywell has its principal place of business at 300 South Tryon Street Suite 500, Charlotte, North Carolina 28202.

223.    Honeywell developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

224.    Defendant Innotex Corp. ("Innotex") is a Delaware corporation and does business throughout the United States. Innotex has its principal place of business at 2397 Harts Ferry Road, Ohatchee, AL 36271.

225.    Innotex developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

226.    Defendant Johnson Controls, Inc. ("Johnson Controls") is a Wisconsin corporation and does business throughout the United States. Johnson Controls has its principal place of business 5757 North Green Bay Avenue, Milwaukee, WI 53209.

227.    Johnson Controls developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

228.    Defendant Lion Group, Inc. ("Lion") is an Ohio corporation and does business throughout the United States. Lion has its principal place of business at 7200 Poe Avenue, Suite 400 Dayton, Ohio, 45414.

37

229.    Lion developed, manufactured, marketed, distributed, released, sold, and/or used PFAS,
PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

230.    Defendant L.N. Curtis & Sons ("LN Curtis") is a California corporation and does business
throughout the United States. LN Curtis has its principal place of business at 185 Lennon Lane,
Suite 110, Walnut Creek, CA 94598.

231.    LN Curtis developed, manufactured, marketed, distributed, released, sold, and/or used
PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

232.    Defendant Milliken & Company ("Milliken") is a Delaware corporation and does business
throughout the United States. Milliken has its principal place of business at 920 Milliken Road,
Spartanburg, SC 29303.

233.    Milliken developed, manufactured, marketed, distributed, released, sold, and/or used
PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

234.    Defendant Mine Respirator Company, LLC, formerly known as Mine Safety Appliances
Company LLLC, ("MRC") is a Pennsylvania corporation and does business throughout the United
States. MSA has its principal place of business at 1000 Cranberry Woods Drive, Cranberry
Township, Pennsylvania, 16066.

235.    MRC developed, manufactured, marketed, distributed, released, sold, and/or used PFAS,
PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

236.    Defendant Municipal Emergency Services, Inc. ("MES") is a Nevada corporation and does
business throughout the United States. MES has its principal place of business at 12 Turnberry
Lane, Sandy Hook, Connecticut 06482.

237.    MES developed, manufactured, marketed, distributed, released, sold, and/or used PFAS,
PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

238.    Defendant PBI Performance Products, Inc. ("PBI") is a Delaware corporation and does business throughout the United States. PBI has its principal place of business at 9800-D Southern Pine Boulevard, Charlotte, North Carolina 28273.

239.    PBI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

240.    Defendant Perimeter Solutions, LP ("Perimeter") is a Delaware corporation and does business throughout the United States. Perimeter has its principal place of business at 10677 Jersey Blvd, Rancho Cucamonga, CA 91730.

241.    Perimeter developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

242.    Defendant Ricochet Manufacturing Co., Inc. ("Ricochet") is a Pennsylvania corporation and does business throughout the United States. Ricochet has its principal place of business at 4700 Wissahickon Avenue, Suite 112, Philadelphia, PA 19114.

243.    Ricochet developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

244.    Defendant Safety Components Fabric Technologies, Inc. ("SCI") is a Delaware corporation and does business throughout the United States. SCI has its principal place of business at 40 Emery Street, Greenville, SC 29605.

245.    SCI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

246.    Defendant Southern Mills, Inc. d/b/a TenCate Protective Fabrics ("TenCate") is a Georgia corporation and does business throughout the United States. Southern Mills has its principal place of business at 6501 Mall Boulevard, Union City, Georgia 30291.

247.    TenCate developed, manufactured, marketed, distributed, released, sold, and/or used
PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

248.    Defendant Springfield, LLC ("Springfield") was acquired by Milliken in 2015.

249.    Springfield developed, manufactured, marketed, distributed, released, sold, and/or used
PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

250.    Defendant Stedfast USA, Inc. ("Stedfast") is a Delaware corporation and does business
throughout the United States. Stadfast has its principal place of business at 800 Mountain View
Drive, Piney Flats, Tennessee 37686.

251.    Stedfast developed, manufactured, marketed, distributed, released, sold, and/or used PFAS,
PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

252.    Defendant Veridian Limited ("Veridian") is an Iowa corporation and does business
throughout the United States. Veridian has its principal place of business at 3710 West Milwaukee
Street, Spencer, IA 51301.

253.    Veridian developed, manufactured, marketed, distributed, released, sold, and/or used
PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

254.    Defendant W.L. Gore & Associates Inc. ("Gore") is a Delaware corporation and does
business throughout the United States. Gore has its principal place of business at 1901 Barksdale
Road, Newark, Delaware 19711.

255.    Gore developed, manufactured, marketed, distributed, released, sold, and/or used PFAS,
PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

256.    Defendant Witmer Public Safety Group, Inc. ("Witmer") is a Pennsylvania corporation and
does business throughout the United States. Witmer has its principal place of business at 104
Independence Way, Coatesville, PA 19320.

40

257.    Witmer developed, manufactured, marketed, distributed, released, sold, and/or used PFAS,
PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

258.    When reference is made in this Complaint to any act or omission of any of the Defendants,
it shall be deemed that the officers, directors, agents, employees, or representatives of the
Defendants committed or authorized such act or omission, or failed to adequately supervise
or properly control or direct their employees while engaged in the management, direction,
operation, or control of the affairs of Defendants, and did so while acting within the scope of their
duties, employment or agency.

259.    The terms "AFFF Defendant" or "AFFF Defendants" refer to all Defendants named herein
who designed, marketed, developed, manufactured, distributed, released, trained users, produced
instructional materials, promoted, sold, and/or otherwise handled and/or used AFFF containing
PFAS that are used in firefighting training and response exercises which are the subject of this
Complaint. jointly and severally, unless otherwise stated.

260.    The term "TOG Defendant" or "TOG Defendants" refers to all Defendants names herein
who developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS
materials, and products containing PFAS in turnout gear for use in firefighting.

261.    The term "DuPont Defendants" refers to Defendants Chemours Company FC, LLC, Du
Pont de Nemours INC., E.I. DuPont de Nemours and Company, & The Chemours Company.

**FACTUAL ALLEGATIONS**

262.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish
hydrocarbon fuel-based fires.

41

263.    AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

264.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

265.    AFFF Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled AFFF containing toxic PFAS or underlying PFAS containing chemicals used in AFFF production that were used by entities around the country, including military, county, and municipal firefighting departments.

266.    AFFF Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause the contamination of Plaintiffs' blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiffs.

267.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

268.    PFAS are a family of chemical compounds containing fluorine and carbon atoms.

269.    PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals is entirely human-made and does not naturally occur or otherwise exist.

270.    Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

42

A.     **AFFF/PFAS Hazardous Effects on Humans**

271.    AFFF and its components are associated with a wide variety of adverse health effects in humans.

272.    Exposure to AFFF Defendants' products has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, liver cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease, and infertility.

273.    By at least the end of the 1960s, animal toxicity testing performed by some Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

274.    By at least the end of the 1960s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

275.    By at least the end of the 1970s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

276.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had

43

caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one

such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and

possible human carcinogen.

277.    It was understood by AFFF Defendants by at least the end of the 1980s that a chemical that

caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the

precise mechanism of action by which the tumors were caused was known and would not occur in

humans.

278.    By at least the end of the 1980s, scientists had not determined the precise mechanism of

action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis

classification mandated AFFF Defendants presume any such PFAS material that caused tumors in

animal studies could present a potential cancer risk to exposed humans.

279.    By at least the end of the 1980s, additional research and testing performed by some

Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated

incidence of certain cancers and other adverse health effects, including elevated liver enzymes and

birth defects, had been observed among workers exposed to such materials, including at least

PFOA, but such data was not published, provided to governmental entities as required by law, or

otherwise publicly disclosed at the time.

280.    By at least the end of the 1980s, some Defendants, including at least 3M and DuPont,

understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and

accumulate in the human blood and in the human body, but that once in the human body and blood,

particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that

it would take a very long time before even half of the material would start to be eliminated, which

44

allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

281. By at least the end of the 1990s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

282. By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that AFFF Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

283. By at least 2010, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

284. When the United States Environmental Protection Agency ("EPA") and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, AFFF Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

285. After the EPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, AFFF Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

45

286.    AFFF Defendants manufacturing and/or using Short-Chain PFAS, including at least
DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been
found in human blood.

287.    By at least the mid-2010s, AFFF Defendants, including at least DuPont and Chemours,
were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors
(Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a
chronic rat cancer study with a non-Short-Chain PFAS.

288.    Research and testing performed by and/or on behalf of AFFF Defendants making and/or
using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar,
and/or additional risks to human health as had been found in research on other PFAS materials,
including cancer risk.

289.    Nevertheless, AFFF Defendants repeatedly assured and represented to governmental
entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain
PFAS, in human blood at the levels found within the United States present no risk of harm and is
of no legal, toxicological, or medical significance of any kind.

290.    At all relevant times, AFFF Defendants, individually and/or collectively, possessed the
resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen
not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the
nature that AFFF Defendants claim is necessary to confirm and/or prove that the presence of any
one and/or combination of PFAS in human blood causes any disease and/or adverse health impact
of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological,
or medical significance to humans, according to standards AFFF Defendants deem acceptable.

291.    Even after an independent science panel, known as the "C8 Science Panel," publicly
announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA,
had "probable links" with certain human diseases, including kidney cancer, testicular cancer,
ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, AFFF
Defendants repeatedly assured and represented to governmental entities, their customers, and the
public (and continue to do so) that the presence of PFAS in human blood at the levels found within
the United States presents no risk of harm and is of no legal, toxicological, or medical significance
of any kind, and have represented to and assured such governmental entities, their customers, and
the public (and continue to do so) that the work of the independent C8 Science Panel was
inadequate.

292.    At all relevant times, AFFF Defendants shared and/or should have shared among
themselves all relevant information relating to the presence, biopersistence, and bioaccumulation
of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse
effects and/or risks.

293.    As of the present date, blood serum testing and analysis by AFFF Defendants, independent
scientific researchers, and/or government entities has confirmed that PFAS materials are clinically
demonstrably present in approximately 99% of the current population of the United States.

294.    There is no natural "background," normal, and/or acceptable level or rate of any PFAS in
human blood. All PFAS detected and/or present in human blood is present and/or detectable in
such blood as a direct and proximate result of the acts and/or omissions of Defendants.

295.    At all relevant times, Defendants, through their acts and/or omissions, controlled,
minimized, trivialized, manipulated, and/or otherwise influenced the information that was
published in peer-review journals, released by any governmental entity, and/or otherwise made

47

available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiffs from discovering the existence and extent of any injuries/harm as alleged herein.

296.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

297.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiffs to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Plaintiffs' blood.

298.    At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF-containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

299.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

48

300.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

301.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

302.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale, and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the blood and/or body of Plaintiffs with PFAS, and the biopersistence and bioaccumulation of such PFAS in their blood and/or body.

303.    Defendants were and/or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body of Plaintiffs would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiffs.

304.    Defendants did not seek or obtain permission or consent from Plaintiffs before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiffs' exposure

49

to AFFF and the contamination of Plaintiffs' blood and/or body with PFAS materials, and resulting

biopersistence and bioaccumulation of such PFAS in their blood and/or body.

### B.    Defendants' History of Manufacturing and Selling AFFF

305.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s.  In the

1960s, 3M used its fluorination process to develop AFFF.

306.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

307.    National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.

308.    Buckeye began to manufacture, market, and sell AFFF in the 2000s.

309.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related

products, including AFFF. 3M, in its press release announcing the phase out, stated "our products

are safe," and that 3M's decision was "based on [its] principles of responsible environment

management." 3M further stated that "the presence of these materials at [] very low levels does

not pose a human health or environmental risk." In communications with the EPA at that time, 3M

also stated that it had "concluded that…other business opportunities were more deserving of the

company's energies and attention…"

310.    Following 3M's exit from the AFFF market, the remaining AFFF Defendants continued to

manufacture and sell AFFF that contained PFAS and/or its precursors.

311.    AFFF Defendants knew their customers warehoused large stockpiles of AFFF. In fact,

AFFF Defendants marketed their AFFF products by touting its shelf-life. Even after AFFF

Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans

following exposure, AFFF Defendants concealed the true nature of PFAS. While AFFF

Defendants phased out production or transitioned to other formulas, they did not instruct their

customers that they should not use AFFF that contained PFAS and/or their precursors. AFFF

Defendants further did not act to get their harmful products off the market.

312.    AFFF Defendants did not warn public entities, firefighter trainees who they knew would

foreseeably come into contact with their AFFF products, or firefighters employed by either civilian

and/or military employers. that use of and/or exposure to AFFF Defendants' products containing

PFAS and/or its precursors would pose a danger to human health

313.    Plaintiffs directly used, were exposed to, and/or were given AFFF to help fight fires on a

regular basis.

314.    Plaintiffs were never informed that this product was inherently dangerous. Nor were the

Plaintiffs warned about the known health risks associated with this product.

315.    Plaintiffs never received or were told to use any protective gear to guard against the known

dangerous propensities of this product.

316.    AFFF Defendants have known of the health hazards associated with AFFF and/or its

compounds for decades and that in their intended and/or common use they would harm human

health.

317.    Information regarding AFFF and its compounds was readily accessible to each of the

above-referenced AFFF Defendants for decades because each is an expert in the field of AFFF

manufacturing and/or the materials needed to manufacture AFFF, and each has detailed

information and understanding about the chemical compounds that form AFFF products.

318.    The AFFF Defendants' manufacture, distribution, and/or sale of AFFF resulted in the

Plaintiffs and other individuals who came in contact with the chemical to develop injuries,

including but not limited to cancer.

51

319.    The AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and
through their involvement and/or participation in the creation of training and instructional
materials and activities, knew, foresaw, and/or should have known and/or foreseen that the
Plaintiffs and those similarly situated would be harmed.

320.    The AFFF Defendants' products were unreasonably dangerous and the Defendants failed
to warn of this danger.

### C.    PFAS-Containing Turnout Gear

321.    During firefighting training and when responding to fires and performing fire
extinguishment, firefighters wear turnouts that are intended to provide a degree of thermal,
chemical, and biological protection for a firefighter. Turnout gear components include individual
components such as a helmet, hood, jacket, pants and suspenders, boots, and gloves. Each
component of the jacket and pants are made of an outer layer, as well as several inner layers that
include a moisture barrier and thermal liner which are meant to protect the firefighter from ambient
heat.

322.    PFAS chemicals are used in turnout gear to impart heat, water, and stain resistance to the
outer shell and moisture barrier of turnout gear.

323.    A June 2020 study of turnout gear by researchers at the University of Notre Dame analyzed
30 new and used turnout jackets and pants originally marketed, distributed, and sold in 2008, 2014,
and 2017, by six turnout gear makers, including Defendants MSA, Globe, Lion, and Honeywell
and found high levels of PFAS in turnout gear worn, used, or handled by firefighters, including
the Firefighter Plaintiffs.

324.    When exposed to heat, PFAS chemicals in the turnouts off-gas, break down, and degrade
into highly mobile and toxic particles and dust, exposing firefighters to PFAS chemicals, particles,

and dust, including through skin contact/absorption, ingestion (e.g., hand-to-mouth contact) and/or inhalation. Further firefighter exposure to these highly mobile and toxic materials occurs through normal workplace activities, because particles or dust from their turnouts spread to fire vehicles and fire stations, as well as firefighters' personal vehicles and homes.

325.    Such workplace exposure to PFAS or PFAS-containing materials has been found to be toxic to humans. As far back as a July 31, 1980 internal memo, DuPont officials described measures that were needed to prevent workplace exposure to PFOA, which they knew could permeate all protective materials, and noted that PFOA's toxicity varied depending on the exposure pathway, acknowledging that ingestion was "slightly toxic," dermal contact was "slightly to moderately toxic" and inhalation was "highly toxic." The memo concluded "continued exposure is not tolerable."

326.    As alleged herein, the Firefighter Plaintiffs wear and/or wore turnouts in the ordinary course of performing their duties, as the turnouts were intended to be used and in a foreseeable manner, which exposed them to significant levels of PFAS.

327.    The Firefighter Plaintiffs did not know, and in the exercise of reasonable diligence could not have known, that the turnouts they wore or used in the course of performing their duties contained PFAS or PFAS-containing materials, and similarly did not know and could not have known that they routinely suffered exposure to PFAS or PFAS-containing materials in the turnouts they wore or used in performing their duties. The turnout gear worn or used by the Firefighter Plaintiffs did not and does not contain labeling information saying that the gear contains PFAS, and similarly did not and does not warn the Firefighter Plaintiffs of the health risks associated with exposure to PFAS.

328.    Like fire departments across the country, many Plaintiffs only had one set of turnouts for years and would wash their turnouts at home and/or in station machines along with their daily station wear uniforms.

## CAUSES OF ACTION
## COUNT I – NEGLIGENCE

329.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

330.    Defendants had a duty to individuals, including the Plaintiffs, to exercise reasonable, ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to the AFFF or TOG products.

331.    Defendants breached their duty of care and were negligent, grossly negligent, reckless, and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the AFFF or TOG products or underlying PFAS containing chemicals used in AFFF or TOG production in one or more of the following respects:

  a.    Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiffs;

  b.    Failing to use reasonable care in the testing of the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiffs;

  c.    Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiffs;

  d.    Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including Plaintiffs;

  e.    Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including the Plaintiffs;

  f.    Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning; and

54

g. In selling and or distributing a product which was inherently dangerous to the public;

332.    Plaintiffs used the AFFF- or TOG-containing PFAS products in an intended and/or reasonably foreseeable manner.

333.    As a direct and proximate result of Defendants' negligence, Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

For the reasons stated, Plaintiffs request the Court enter judgment against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, pre-judgment and post-judgment interest, and for such other and further relief as this Court may deem proper.

## COUNT II – BATTERY

334.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

335.    At all relevant times, Defendants possessed knowledge that the AFFF or TOG containing PFAS which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio-persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiffs having PFAS in Plaintiffs' blood, and the biopersistence and bioaccumulation of such PFAS in Plaintiffs' blood.

336.    However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiffs

55

accumulating PFAS in Plaintiffs' blood and/or body, and such PFAS persisting and accumulating in Plaintiffs' blood and/or body.

337.    Defendants did not seek or obtain permission or consent from Plaintiffs to put or allow PFAS materials into Plaintiffs' blood and/or body, or to persist in and/or accumulate in Plaintiffs' blood and/or body.

338.    Entry into, persistence in, and accumulation of such PFAS in Plaintiffs' body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiffs' person and unreasonably interferes with Plaintiffs' rightful use and possession of Plaintiffs' blood and/or body.

339.    At all relevant times, the PFAS present in the blood of Plaintiffs originated from Defendants' acts and/or omissions.

340.    Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiffs that resulted in persisting and accumulating levels of PFAS in Plaintiffs' blood.

341.    Plaintiffs, and any reasonable person, would find the contact at issue harmful and/or offensive.

342.    Defendants acted intentionally with the knowledge and/or belief that the contact, presence, and/or invasion of PFAS with, onto and/or into Plaintiffs' blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

343.    Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiffs' blood and/or body.

344.     The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiffs is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

345.     The presence of PFAS in the blood and/or body of Plaintiffs altered the structure and/or function of such blood and/or body parts and resulted in cancer.

346.     As a direct and proximate result of the foregoing acts and omissions, Plaintiffs suffered physical injury for which Defendants are therefore liable.

For the reasons stated, Plaintiffs request the Court enter judgment against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, pre-judgment and post-judgment interest, and for such other and further relief as this Court may deem proper.

### COUNT III – NEGLIGENT FAILURE TO WARN/INADEQUATE WARNING

347.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

348.     Defendants knew or should have known:

   a)  exposure to AFFF or TOG PFAS-containing products was hazardous to human health;

   b)  the manner in which they were designing, marketing, developing, manufacturing, distributing, releasing, training, instructing, promoting, and selling AFFF or TOG containing PFAS was hazardous to human health; and

   c)  the manner in which they were designing, marketing, developing, manufacturing, marketing, distributing, releasing, training, instructing, promotion, and selling AFFF- or TOG PFAS-containing products would result in the contamination of Plaintiffs' blood and/or body as a result of exposure.

349.     Defendants had a duty to warn of the hazards associated with AFFF or TOG containing PFAS entering the blood and/or body of Plaintiffs because they knew or should have known of the

57

dangerous, hazardous, and toxic properties of AFFF or TOG PFAS-containing products.
Defendants failed to provide sufficient warning to purchasers that the use of their AFFF or TOG
PFAS-containing products would cause PFAS to be released and cause the exposure and
bioaccumulation of these toxic chemicals in the blood and/or body of Plaintiffs.

350.    Adequate instructions and warnings on the AFFF- or TOG-containing PFAS could have
reduced or avoided these foreseeable risks of harm and injury to Plaintiffs. If Defendants provided
adequate warnings:

    a) Plaintiffs could have and would have taken measures to avoid or lessen exposure; and

    b) End users and governments could have taken steps to reduce or prevent the release of
       PFASs into the blood and/or body of Plaintiffs. Defendants' failure to warn was a direct
       and proximate cause of Plaintiffs' injuries from PFAS that came from the use, storage, and
       disposal of AFFF or TOG containing PFAS. Defendants' failure to provide adequate and
       sufficient warnings for the AFFF or TOG containing PFAS they designed, marketed,
       manufactured, distributed, released, promoted, and sold renders the AFFF or TOG a
       defective product.

351.    Defendants were negligent in their failure to provide Plaintiffs with adequate warnings or
instruction that the use of their AFFF or TOG products would cause PFAS to be released into the
blood and/or body of Plaintiffs. As a result of Defendants' conduct and the resulting
contamination, Plaintiffs suffered severe personal injuries by exposure to AFFF or TOG containing
PFAS.

352.    Plaintiffs used the AFFF or TOG PFAS-containing products in an intended and/or
reasonably foreseeable manner.

353.    Defendants' negligent failure to warn directly and proximately caused the harm to and
damages suffered by Plaintiffs.

      For the reasons stated, Plaintiffs request the Court enter judgment against Defendants for
actual, compensatory, consequential, and punitive damages, together with the costs of this action,

pre-judgment and post-judgment interest, and for such other and further relief as this Court may deem proper.

## COUNT IV – NEGLIGENT DESIGN

354.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

355.    Defendants knew or should have known:

    a)    exposure to AFFF or TOG containing PFAS is hazardous to human health;

    b)    the manner in which AFFF or TOG containing PFAS was designed, manufactured, marketed, distributed, and sold was hazardous to human health; and

    c)    the manner in which AFFF or TOG containing PFAS was designed, manufactured, marketed, distributed, and could and would release PFAS into Plaintiffs and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiffs.

356.    Knowing of the dangerous and hazardous properties of the AFFF- or TOG-containing PFAS, Defendants could have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF or TOG that did not contain hazardous and toxic PFAS. These alternative designs and formulations were already available, practical, and technologically feasible. The use of these alternative designs would have reduced or prevented reasonably foreseeable harm to Plaintiffs caused by the Defendants' design, manufacture, marketing, distribution, and sale of AFFF or TOG containing hazardous and toxic PFAS.

357.    The AFFF or TOG PFAS-containing products that were designed, manufactured, marketed, distributed, and sold by the Defendants was so hazardous, toxic, and dangerous to human health that the act of designing, formulating, manufacturing, marketing, distributing, and selling this AFFF was unreasonably dangerous under the circumstances.

358.    Plaintiffs used the AFFF or TOG PFAS-containing products in an intended and/or reasonably foreseeable manner.

359. The risks posed by exposure to these products outweighed the benefits. An ordinary consumer would not expect those products to carry a significant risk of serious injury and death from PFAS.

360. The AFFF- or TOG-containing PFAS products designed, formulated, manufactured, marketed, distributed, and sold by Defendants were defectively designed and the foreseeable risk of harm could and would have been reduced or eliminated by the adoption of a reasonable alternative design that was not unreasonably dangerous. Defendants' defective design and formulation of AFFF or TOG PFAS-containing products was a direct and proximate cause of the contamination of the blood and/or body of Plaintiffs and the persistence and accumulation of PFAS in Plaintiffs' blood and/or body.

361. Plaintiffs used the AFFF- or TOG-containing PFAS products in an intended and/or reasonably foreseeable manner.

362. Defendants' defective design and formulation of AFFF or TOG PFAS-containing products caused the contamination described herein resulting in personal injuries to Plaintiffs. As a direct result of the harm and injury caused by Defendants' defective design and the contamination described herein, Plaintiffs have been exposed to AFFF or TOG containing PFAS and other toxic substances and have developed cancer.

363. Defendants' negligent failure to design a reasonably safe product directly and proximately caused the harm to and damages suffered by Plaintiffs.

For the reasons stated, Plaintiffs request the Court enter judgment against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, pre-judgment and post-judgment interest, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V – STRICT LIABILITY (STATUTORY)

364.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

365.    Plaintiffs assert any and all remedies available under statutory causes of action under state laws governing Plaintiffs' claims strict liability against each Defendant.

366.    Defendants were engaged in designing, manufacturing, marketing, selling, and distributing AFFF or TOG PFAS-containing products.

367.    The AFFF or TOG PFAS-containing products were in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the Defendants.

368.    Plaintiffs used the AFFF or TOG PFAS-containing products in an intended and/or reasonably foreseeable manner.

369.    The risks posed by exposure to these products outweighed the benefits. An ordinary consumer would not expect those products to carry a significant risk of serious injury and death from PFAS.

370.    As a direct and proximate result of the Defendants products' aforementioned defects, Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

371.    Defendants are strictly liable in tort to the Plaintiffs for their wrongful conduct.

        For the reasons stated, Plaintiffs request the Court enter judgment against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem proper.

## COUNT VI – STRICT LIABILITY (RESTATEMENT)

372.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

373.    Plaintiffs bring strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

374.    As designed, manufactured, marketed, tested, assembled, equipped, distributed, and/or sold by Defendants, the AFFF- or TOG PFAS-containing products were in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including Plaintiffs.

375.    Defendants had available reasonable alternative designs which would have made the AFFF or TOG PFAS-containing products safer and would have most likely prevented the injuries and damages to Plaintiffs.

376.    Defendants failed to properly and adequately warn and instruct Plaintiffs as to the proper safety and use of the Defendants' products.

377.    Defendants failed to properly and adequately warn and instruct Plaintiffs regarding the inadequate research and testing of the product.

378.    Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

379.    Plaintiffs used the AFFF or TOG PFAS-containing products in an intended and/or reasonably foreseeable manner.

380.    The risks posed by exposure to these products outweighed the benefits. An ordinary consumer would not expect those products to carry a significant risk of serious injury and death from PFAS.

381.    As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the AFFF or TOG PFAS products, Plaintiffs have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

382.    By reason of the foregoing, Defendants are strictly liable for the injuries and damages suffered by the Plaintiffs, caused by these defects in the AFFF and/or TOG PFAS products.

For the reasons stated, Plaintiffs request the Court enter judgment against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem proper.

## <u>COUNT VII – FRAUDULENT CONCEALMENT</u>

383.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

384.    Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

385.    Defendants fraudulently concealed from and/or failed to disclose to or warn Plaintiffs and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

386.    Defendants were under a duty to the Plaintiffs and the public to disclose and warn of the defective and harmful nature of the products because:

   a)  Defendants were in a superior position to know the true quality, safety, and efficacy of the Defendants' products;

   b)  Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

   c)  Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from the Plaintiffs.

387.    The facts concealed and/or not disclosed by Defendants to Plaintiffs were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use Defendants' products.

388.    Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that the Plaintiffs would use the Defendants' products, the Plaintiffs justifiably acted or relied upon, to Plaintiffs' detriment, the concealed and/or non-disclosed facts as evidenced by Plaintiffs' use of the Defendants' products.

389.    Defendants, by concealment and/or other acts or omissions, intentionally prevented the Plaintiffs from acquiring material information regarding the lack of safety and effectiveness of the Defendants' products and are subject to the same liability to Plaintiffs for Plaintiffs' pecuniary losses, as though Defendants had stated the non-existence of such material information regarding the Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that the Plaintiffs were thus prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

390.    As a proximate result of Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

391.    Defendants' act and omissions described in this Count VII tolled the applicable statutes of limitations for Plaintiffs' claims.

For the reasons stated, Plaintiffs request the Court enter judgment against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem proper.

## **COUNT VIII – BREACH OF EXPRESS AND IMPLIED WARRANTIES**

392.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

393.    At all times relevant hereto, Defendants manufactured, marketed, labeled, and sold the AFFF- or TOG- containing PFAS products described earlier in this Complaint.

394.    At the time Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF or TOG PFAS products, Defendants knew of the use for which they were intended, and implied and/or expressly warranted that the products were merchantable, safe, and fit for their intended purpose.

395.    Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by Plaintiffs.

396.    Plaintiffs are within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

397.    Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, and cancer.

398.    As a proximate result of Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

65

For the reasons stated, Plaintiffs request the Court enter judgment against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem proper.

## COUNT IX – WANTONNESS

399.    Plaintiffs incorporate the preceding paragraphs of this Complaint.

400.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF or TOG products, including Plaintiffs.

401.    Defendants breached the duty of care owed to Plaintiffs.

402.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF or TOG products, including Plaintiffs.

403.    As a proximate and foreseeable consequent of Defendants acts and omissions, Plaintiffs were exposed to unreasonably dangerous toxic PFAS-containing AFFF or TOG.

404.    As a proximate result of Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

For the reasons stated, Plaintiffs request the Court enter judgment against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem proper.

## COUNT X – FRAUDULENT TRANSFER, 6 Del. C. § 1304
## (DUPONT DEFENDANTS)

405.    Plaintiffs incorporate the preceding paragraphs of this Complaint.

406.    Under Delaware Code Title 6, § 1304:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> b Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

407.    Plaintiffs are a "Creditor" possessing "Claims" against the DuPont Defendants as those terms are defined in Delaware Code Title 6, § 1301.

408.    The DuPont Defendants have acted with actual intent to hinder, delay, and defraud DuPont's creditors.

409.    Assets and liabilities were transferred between the DuPont Defendants, whereby certain DuPont Defendants did not receive a reasonably equivalent value in exchange for the transfer and they were engaged in or about to engage in a business for which the remaining assets were unreasonably small and/or they intended to incur or reasonably should have believed that they would incur debts beyond their ability to pay as the debts became due.

410.    On information and belief, the DuPont Defendants engaged in a complicated restructuring of DuPont for the purpose of shielding assets from creditors with claims related to PFAS contamination or exposure, such as Plaintiffs.

411.    On information and belief, at the time of this restructuring, DuPont knew that its liabilities related to PFAS were likely in the billions of dollars.

412.    In the initial step of restructuring, DuPont formed Chemours in 2015 as a wholly owned subsidiary. In July 2015, DuPont spun off Chemours, transferring DuPont's Performance Chemicals Unit along with a vast amount of environmental liabilities – including all those related

67

to PFAS. As part of the transfer, Chemours transferred valuable assets to DuPont, including a $3.9 billion dividend to DuPont stockholders, for which Chemours incurred additional debt to pay.

413.    On information and belief, the Chemours spin-off was not bargained at arm's length. At the time of the spin off, Chemours had a separate board, but was controlled by DuPont employees.

414.    On information and belief, DuPont transferred to Chemours a disproportionately small allocation of assets to cover debts and liabilities. Dupont transferred less than 20% of its business line, but over 66% of its environmental liabilities and 90% of DuPont's pending litigation. These liabilities were taken on by Chemours in addition to the $3.9 billion in debt it assumed to pay a dividend to DuPont's shareholders. As a result, Chemours did not receive reasonably equivalent value in exchange for the transfer of debts and obligations from DuPont.

415.    In its valuation, DuPont purposefully undervalued the potential maximum liability from the PFAS liabilities it transferred to Chemours. At the time of the spin-off, DuPont had been sued, threatened with lawsuits, and had knowledge of forthcoming litigation regarding DuPont's liabilities for damages and injuries from the manufacture, sale, and worldwide use of PFAS-containing products. DuPont and Chemours knew or should have known that Chemours would incur debts beyond its ability to pay as they came due.

416.    In further restructuring, DuPont sought to further protect its assets from PFAS liabilities by first merging itself with Dow and then separating its now comingled assets among three newly created companies: DowDuPont, Inc. ("DowDuPont") (which later became New DuPont); Dow, Inc. ("New Dow"), and Corteva.

417.    As a result of the merger, Dow and DuPont became wholly owned subsidiaries of DowDupont. On information and belief, after the merger, DowDupont underwent a hidden internal reorganization with the net effect being the transfer of a substantial portion of its valuable assets

to DowDupont for less than the assets were worth. On information and belief, the transactions were intended to frustrate and hinder creditors with claims against DuPont, including with respect to PFAS liabilities.

418.    As a result of this internal organization, all of Dow and DuPont's assets were reshuffled into three divisions: the Agriculture Business, the Specialty Products Business, and the Material Sciences Business.

419.    On June 1, 2019, the DuPont Defendants completed the final step of the restructuring by spinning off two newly publicly traded entities, Corteva and New Dow. Generally, the assets related to the Agriculture Business division were allocated to Corteva; assets related to the Material Science Business were allocated to New Dow; and the assets related to the Specialty Products Business remained with DowDupont, which then became New DuPont. DuPont became a wholly owned subsidiary of Corteva.

420.    On information and belief, Corteva and New DuPont assumed responsibility for some of DuPont's historic PFAS liabilities.

421.    On information and belief, during the restructuring, DuPont's assets were transferred to Corteva and New DuPont for far less than their actual value. At the end of these transactions, DuPont divested approximately half of its tangible assets, totaling roughly $20 billion.

422.    The net result of the restructuring was to move DuPont's extensive PFAS liabilities to an underfunded company, Chemours, and to further shield DuPont's extensive assets by merging them with Dow's assets and then transferring them to Corteva and New DuPont for far less than their value.

423.    Plaintiffs have been harmed by these transactions, which were designed to shield assets from creditors such as Plaintiffs, which have been damaged by DuPont's conduct.

424.    Plaintiffs are entitled to void these transactions and to recover property or value transferred under 6 Del. C. § 1307.

## TOLLING OF THE STATUTE OF LIMITATIONS
### Discovery Rule Tolling

425.    Plaintiffs did not known and had no way of knowing about the risk of serious injury associated with the use of and exposure to PFAS until very recently.

426.    Within the time period of any applicable statute of limitations, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to PFAS is harmful to human health.

427.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to PFAS; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that PFAS could cause personal injury.

428.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

### Fraudulent Concealment Tolling

429.    All applicable statute of limitations have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action, including making misrepresentations to, and omitted material facts from, Plaintiffs with the intention of preventing Plaintiffs from filing suit against Defendants.

430.    Instead of disclosing critical safety information regarding AFFF or TOG, Defendants have consistently and falsely represented the safety of AFFF or TOG products.

431.    This fraudulent concealment continues through present day.

70

432.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled with respect to Plaintiffs' claims.

<h3 align="center">Estoppel</h3>

433.    Defendants were under a continuous duty to consumers, end users, and other persons coming into contact with their products, including Plaintiffs, to accurately provide safety information concerning their products and the risk associated with the use of and exposure to AFFF or TOG.

434.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF or TOG and the serious risks associated with the use of and exposure to AFFF or TOG.

435.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

<h3 align="center">PRAYER FOR RELIEF</h3>

For the reasons stated, Plaintiffs demand judgment against all Defendants, jointly and severally, on each of the above-referenced claims and causes of action as follows:

Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to, pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

Awarding punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the Plaintiffs and of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

71

Awarding Plaintiffs attorneys' fees;

Awarding Plaintiffs the costs of these proceedings;

Awarding Plaintiffs pre- and post-judgment interest as permitted by law, and

Grating such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Dated: August 12, 2025

Respectfully Submitted,

Steven D. Davis, IL No. 6281263
Eric W. Cracken, IL No. 6334234
TorHoerman Law LLC
210 S. Main Street
Edwardsville, IL 62025
Ph: 618-656-4400
Fax: 618-656-4401
E: sdavis@thlawyer.com
    ecracken@thlawyer.com
*Attorneys for Plaintiffs*
